A. F. BURSTROM *v.* UNITED STATES (No. 4872) [1]

---

[1] C. A. D. 631.

United States Court of Customs and Patent Appeals, November 30, 1956

*John C. Ray* (*Arthur R. Martoccia* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

[Oral argument October 4, 1956, by Mr. Welsh; submitted on brief by appellant]

Before Johnson, Chief Judge, and O'Connell, Worley, Cole, and Rich, Associate Judges

Rich, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, C. D. 1752, overruling the importer's protest against the collector's assessment of duty on certain steel slabs, valued above 2½ and not above 5 cents per pound, imported from Canada in 1949, at 10 per centum ad valorem under paragraph 304 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802.

Appellant contends that duty should have been assessed only upon the value of alterations performed in Canada, pursuant to the provisions of paragraph 1615 (g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

The pertinent statutory provisions are:

Par. 304.
Steel ingots, cogged ingots, blooms and slabs, by whatever process made; * * *

\* \* \* \* \* \* \*

Valued above 2½ and not above 5 cents per pound . . . 10% ad val.
Par. 1615:

\* \* \* \* \* \* \*

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

The basis of appellant's contention is that steel ingots, conceded by the Government to have been made in and exported from the United States, were merely "altered" in being made into slabs in Canada. No question of repairs is raised on appeal.

Appellant was not represented at the argument before us but careful consideration has been given to all of the points presented in his brief.

One witness was called by the importer, Mr. Eric M. P. Caunce, chief chemist and metallurgist at the Ford Motor Company of Canada,

Ltd. That part of his testimony pertinent to the issue under consideration was summarized by the lower court as follows, the accuracy of the summary not being questioned:

Due to the short supply of steel at the time, certain ingots were brought to Canada for slabbing. Ingots are specially designed steel castings and are made by pouring the metal received from the furnace into cast-iron molds. Those [ingots] involved herein measured 22 x 48 x 56 inches and weighed approximately 6 tons. From these ingots, slabs were produced by the Steel Co. of Canada at Hamilton, Ontario. The ingots were placed in a soaking pit, a large rectangular furnace with a temperature of 2,300 to 2,350 degrees Fahrenheit, for 6 to 8 hours. Then, they were taken to the blooming or slabbing mill, where they were passed backwards and forwards under the rollers several times, then reversed and edged, and passed under the rollers again. The resulting articles were 4 to 4¼ inches thick, 44 inches wide, and 30 feet long. They were cut into lengths of about 10 feet, and the butt and crop ends cut off, these portions being useless because of various amounts of "segregation and impurities."

\*    \*    \*    \*    \*    \*    \*

The witness said that the ingot is a raw material; that the slab could hardly be called that, but he would not call it a manufacture either. In his opinion, both the ingot and the slab are castings, and the material does not cease to be a casting until the production of an article usable for some specific purpose, which occurs about five operations after the slabbing process. He said that there are no characteristics which are present in the ingot and the slab that are not existent in the product resulting from the five additional operations, except the form and a greater ductility.

\*    \*    \*    \*    \*    \*    \*

In the opinion of the witness, a slab is essentially the same as an ingot, but in different form. He stated also: After the ingot has been rolled, it is a semi-processed ingot, but it is not in the form of an ingot and is known as a slab. It has a new name and is bought and sold as a different commodity. A non-metallurgist could not tell by looking at a slab that it had ever been an ingot. Two and a fraction, or three, slabs, are produced from an ingot, but the slabs require further processing for use. They are rolled into sheets, coils, and bands, from which the ultimate articles are made. These items—ingots, slabs, sheets, coils, and bands—have commercial value, and each is distinctly known commercially as a different product.

Slabs, on the basis of this evidence, are clearly not the same articles as ingots and differ therefrom in name, value, appearance, size, shape and use. It will be observed that they are separately specified in paragraph 304, *supra*.

Appellant contends that the ultimate use of ingots is the production of sheet steel, which requires several stages, the first stage being the production of slabs, so that both ingots and slabs have "the basic character of being raw material." From this it is argued "that so long as crude material is being altered, such altered crude material is, upon reimportation, protected by paragraph 1615 (g), because the crude article retains its identity as material and though its form may change, its chemistry and metallurgical characteristics remain the same."

Appellant relies first on a passage, inaccurately quoted in his brief, from *C. S. Emery & Co.* v. *United States*, T. D. 49000, 71 Treas. Dec. 880, which is said to refer to the word "alter" in paragraph 1615 (g). The word "alter" does not appear in paragraph 1615 (g) and the statute under discussion was paragraph 308, not paragraph 1615 (g). The case dealt with the question of the free entry from Canada of certain chuck bushings imported for the purpose of being chromium plated in the United States. It was uncontradicted that the identity of the bushings was not changed by the plating and that they were so marked in being cast that there would be no difficulty in identifying them on re-exportation. There is no similarity to the situation involved here. Bushings went out and bushings came back.

The next case relied on by appellant is *Greene* v. *United States*, 13 Cust. Ct. 273, Abstract 49676. In that case plaintiff took to Mexico on his vacation his deceased wife's diamond solitaire mounted in platinum, purchased a man's ring and had the top portion of the solitaire ring mounted thereon. His claim under paragraph 1615 (g) was denied solely because he had failed to comply with the regulations relating to exportation, compliance therewith being held to be a prerequisite to the application of paragraph 1615 (g) on his return to the United States. The Customs Court said that "alterations" clearly contemplates new additions

* * * so that an article may be made different from that exported in some particular *so long as it has not been converted into something else.* [Emphasis added.]

We find nothing in this case to support appellant's claim. Clearly the conversion of ingots into slabs does convert them into something else.

Appellant attempts to distinguish the instant case from *United States* v. *The J. D. Richardson Company*, 36 C. C. P. A. (Customs) 15, C. A. D. 390. The court there held that unflanged rims or flat bands exported from this country and reimported after being flanged by three pressing operations, had been changed to new articles and had not merely been altered. Here the foreign processing has likewise created new articles and the law of the *Richardson* case applies. Appellant argues that the fact that the exported ingots and the imported slabs, in the instant case, would be dutiable under the same paragraph distinguishes this case from the *Richardson* case where the exported and imported wares were subject to different duties. This difference is immaterial where the foreign processing has created a new article.

Finally appellant raises a question predicated on the amendment of paragraph 1615 (g) by the Customs Simplification Act of 1954 (68 Stat. 136) under which the slabs here involved, made from exported ingots, would now clearly be dutiable only with respect to the value

of the processing. This amendment was, of course, long subsequent to appellant's importation and is inapplicable; but appellant argues that the court below "reasoned from this that Congress had not previously meant to include any alterations or repairs to metallic articles in paragraph 1615 (g) of the act of 1930." This, counsel for the appellant states, was the "fatal error" of the court below. We do not see that the Customs Court indulged in any such reasoning or fell into any such error. Before discussing the aforesaid amendment it had already reached the conclusion that the processing of ingots into slabs was not "alteration" under paragraph 1615 (g) because a change from one form to another is not "alteration." It correctly found its view supported by the 1954 amendment. Appellant's position is that so long as the material imported is the same material which was exported, any change which has taken place is no more than an "alteration." This would include the processing of ingots into their final form as sheet steel and even the shaping thereof into finished articles and goes beyond any sensible meaning of the term "alteration."

The distinction which must be made is between the terms "repairs," "alterations" and "processing." The 1954 amendment uses the expression "subjected to a process of manufacture" as synonymous with processing and the inclusion of processing, as distinguished from repairs and alterations, was the change brought about by the amendment.

Finding no error in the judgment of the Customs Court in overruling the protest, it is *affirmed*.

COLE, J., was present at the argument of this case, but, because of illness, did not participate in the decision.